UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RANDY COUNTS,**

       **Plaintiff,**                          Case No. 2:05-cv-124
                                                    JUDGE GREGORY L. FROST
       v.                                        Magistrate Judge Norah McCann King

**KRATON POLYMERS U.S. LLC, et al.**

       **Defendants.**

<u>**ORDER**</u>

This matter is before the Court for consideration of a motion for summary judgment filed by Defendant KRATON Polymers U.S. L.L.C. ("KRATON") (Doc. # 22), a memorandum in opposition filed by Plaintiff, Randy Counts (Doc. # 29), and a reply memorandum filed by KRATON (Doc. # ).  Also before the Court are a related motion to strike filed by KRATON (Doc. # 33), a memorandum in opposition filed by Counts (Doc. # 39), and a reply memorandum filed by KRATON (Doc. # 42), as well as a motion to strike filed by Counts (Doc. # 43), a memorandum in opposition filed by KRATON (Doc. # 47), and a reply memorandum filed by Counts (Doc. # 49).

**I.  Background**

Beginning in December 1972, Plaintiff, Randy Counts, was employed as a chemical plant technician with Shell Chemical Company ("Shell").  In 1995, Counts took a drug test and tested positive for cocaine.  After undergoing treatment, he continued to work for Shell under a May 2000 Return to Work Agreement that permitted random substance abuse testing for a period of 48 months following his return to work.

1

KRATON subsequently purchased Shell's assets.  Counts signed an October 30, 2000 employment letter with KRATON that described his employment as "at will" and provided that "either the company or the employees may terminate the employment relationship at any time."

Counts continued being tested for substance abuse and, on December 6, 2002, he provided a urine sample that was split into two samples; both samples were designated as "Substituted" after evaluation, which meant that the third-party testing company had determined that they were "[n]ot consistent with normal human urine."  KRATON supervisor Gary Bennett and human resources manager Wendell Mulford subsequently met with Counts, who denied altering the urine samples and offered no explanation for the results.  Thereafter, KRATON department manager Jim Furl called Counts on December 26, 2002 and terminated his employment.

Counts thereafter responded by initiating the instant suit in the Washington County Court of Common Pleas.  On February 7, 2005, KRATON removed the action to this Court.  (Doc. # 1.)  The complaint asserts four causes of action against KRATON: breach of contract, promissory estoppel, age discrimination in violation of Ohio Rev. Code §§ 4112.14 and 4112.99, and retaliation in violation of Ohio Rev. Code § 4112.02(I) and state common law.[1]

KRATON has filed a motion for summary judgment on all four counts.  (Doc. # 22.) Both sides have moved to strike various documents related to the motion.  (Docs. # 33, 43.)  The parties have completed their briefing, and all three pending motions are now ripe for disposition.

---

[1] The complaint also asserts a negligence claim against a John Doe defendant. (Doc. # 1, Ex. A, at 11.)

2

## II. Motions to Strike

As noted, both KRATON and Counts have filed motions to strike. Taking the motions in order of filing, the Court first to the June 12, 2006 motion by KRATON in which the company seeks to strike Counts' Declaration, which Counts filed on June 8, 2006. (Doc. # 31.) KRATON asserts that the Court must strike this lengthy declaration as violative of S.D. Ohio Civ. R. 7.2(d) because Counts was required to file the declaration by no later than June 6, 2006, the date on which his memorandum in opposition was due.

Three comments are necessary. First, Counts' filing is not an affidavit as KRATON and even Counts variously describe it, but is instead a declaration; it is labeled as the latter and was not witnessed by a notary. Second, KRATON is correct that Counts impermissibly filed the declaration late and that the Court should therefore consider striking the filing. Third, the Court finds the motion to strike moot because Counts' declaration fails to constitute proper summary judgment evidence. It is appropriate to substitute a declaration for a Federal Rule of Civil Procedure 56(e) affidavit. But it is not permissible to present an undated declaration that lacks a discernible date of signing as summary judgment evidence. *See Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (undated declaration must be excluded from consideration as summary judgment evidence). Accordingly, the Court **STRIKES** the Declaration of Randy Counts filed on June 8, 2006. (Doc. # 31.) KRATON's motion to strike that declaration is **DENIED AS MOOT**. (Doc. # 33.)

The same dating deficiency plagues Counts' Declaration filed on June 21, 2006 in conjunction with his opposition to the motion to dismiss (Doc. # 39, Ex. 2), as well as Counts' Rebuttal Declaration filed on July 25, 2006 (Doc. # 44). Pursuant to the binding precedent of

*Bonds*, the Court also **STRIKES** these documents. (Docs. # 39, 44.)

This leaves Counts' motion to strike. (Doc. # 43.) Counts seeks to strike KRATON's June 23, 2006 summary judgment reply memorandum (Doc. # 40) on the grounds that the memorandum violates the Local Civil Rules. In the alternative, Counts asks that if the Court does not strike the reply, then the Court should accept for filing supplemental affidavits of unspecified content and a proffered Supplemental Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.[2] (Doc. # 46.)

Counts contends that KRATON's June 23, 2006 filing impermissibly introduces new grounds for summary judgment and is thus not a proper reply memorandum as contemplated by S.D. Ohio Civ. R. 7.2(a)(2). He targets, for example, KRATON's asserted new reliance of theories such as lack of consideration and argues that permitting consideration of this ground would constitute undue prejudice. KRATON opposes the motion to strike on the grounds that it is "completely frivolous" because it did not assert any new theories in its reply, but instead only responded to Counts' arguments. (Doc. # 47, at 1.) The Court has reviewed the material in question and finds that KRATON's reply fairly raises explicated arguments related to its summary judgment motion and Counts' response.[3] Accordingly, the Court **DENIES** Counts'

---

[2] Contrary to Counts' argument, it is the substantive content and not the title of a filing that controls its character. Therefore, even a curiously titled brief can function as a reply memorandum.

[3] The Court recognizes that Counts' impermissible declaration arguably induced a warranted discussion by KRATON of points he raised therein. Counts cannot draw KRATON into discussing matters through an improper filing and then seek to strike and otherwise proper reply on the grounds of taint. Moreover, given that much of Counts' argument relies on now-stricken evidence, the Court has endeavored to separate the *arguably* tainted portions of the reply linked only to matters arising from the improper declaration.

motion to strike or, in the alternative, to file additional summary judgment evidence and the proffered sur-reply. (Doc. # 43.) The Court **STRIKES** and will not consider the sur-reply. (Doc. # 46.)

### III. Summary Judgment Motion

#### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Counts, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Counts, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-

52.)

### B. Discussion

#### 1. *Age Discrimination*

In order to survive summary judgment on his claim of age discrimination, Counts first must present a *prima facie* case of such discrimination. In cases such as this, where there is a lack of direct evidence of age discrimination, a plaintiff can establish a *prima facie* case by demonstrating that "he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age."[4] *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, 180, 803 N.E.2d 781, 787 (2004) (construing Ohio Rev. Code § 4112.14(A)). KRATON asserts that under this standard, Counts has failed to establish a *prima facie* case of age discrimination.

There is no dispute over the first two elements of Counts' claim. KRATON posits, however, that Counts cannot prove that the third element of a *prima facie* case, that he was qualified for his position as Senior Effluent Technician. KRATON argues that Counts was not qualified for this position on the grounds that he had failed to pass a second drug test. This argument is unpersuasive, however, because "when assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage of a termination case, a court must

---

[4] The same standard involved in a federal age-discrimination claim also generally governs a claim of age discrimination asserted under Ohio law. *See Koval v. Dow Jones & Co.*, 86 Fed. Appx. 61, 65 (6th Cir. 2004) ("Ohio courts evaluate discrimination claims presented under § 4112 according to the same standards federal courts utilize to evaluate discrimination claims presented under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e-2000e(17)"); *Nelson v. General Elec. Co.*, 2 Fed. Appx. 425, 430 n.2 (6th Cir. 2000); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 1999). KRATON then fails to assert any reason why Counts was not qualified for the position *other* than the drug testing incident underlying this case.[5]

KRATON also argues that Counts cannot demonstrate the fourth element of a *prima facie* case: that he was replaced by, or that his discharge permitted the retention of, a person of substantially younger age. The company asserts that the then 48-year-old Counts was replaced by then 54-year-old Danny Gandee. (Doc. # 25, Mulford Dep. at 32-33.) Counts counters by arguing that even though Gandee was his eventual replacement, the younger Michael Isner was in fact Counts' replacement for several months. (Doc. # 25, Mulford Dep. at 30-31.)

The only moderately younger Isner, however, was a cross-trained employee who KRATON drew from a pool of employees to perform Count's duties until Gandee was identified as the replacement through KRATON's bidding process. (Doc. # 25, Mulford Dep. at 31-32.) Gandee was identified approximately three weeks after Counts' termination, remained in his former position while training his replacement, and then moved into Count's position, a process that took approximately three months. (Doc. # 41, Mulford Aff. at 2-3 ¶¶ 8-13.) This does not satisfy the fourth prong of the *prima facie* case.

As KRATON correctly notes, the Sixth Circuit has explained:

> A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is

---

[5] KRATON in fact concedes that Counts was otherwise qualified, stating that "[a]lthough Plaintiff had been previously qualified for his position, the misconduct that precipitated his discharge disqualified him." (Doc. # 22, at 8.)

7

>replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990) (citing *Sahadi v. Reynolds Chem.,* 636 F.2d 1116, 1117 (6th Cir.1980)); *see also Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."); *Godfredson v. Hess & Clark,* 173 F.3d 365, 372-73 (6th Cir.1999) (reaffirming *Barnes,* 896 F.2d at 1465).

*Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003). Thus, contrary to Counts' premise, Isner's temporary assignment of Count's duties fails to present a case of a company replacing an older employee with a younger one, then replacing the younger employee with another individual in an effort to circumvent a claim of age discrimination.

Counts argues that even if he cannot introduce direct evidence of age discrimination or prove the *prima facie* elements of such discrimination under the *McDonnell-Douglas* standard, he has nonetheless demonstrated age discrimination. He asserts that evidence of disparate treatment in which KRATON treated younger workers more favorably than older workers raises an inference of intentional discrimination. KRATON in turn contests that Counts has produced evidence suggesting that it treated similarly-situated younger employees more favorably.

At his deposition and in an affidavit, Counts asserts that KRATON permitted three younger employees to retake drug tests, while the company refused to do the same for him. (Counts Dep. at 93-98, 109.) But as KRATON notes, each evidence of permissible retaking of tests is readily distinguishable so that Counts is left with no similarly situated individuals receiving different treatment. Two of the employees were permitted to retake their tests because the seal on their urine samples had been broken in transit to the lab. The third employee was unable to produce a sufficient quantity of urine to permit testing. (Doc. # 38, Deem Dep. at 25-28, 55-63, 66-67.) These facts stand in stark contrast to Count's situation, and to accept them as

analogous or fairly comparable would be to permit Counts to survive summary judgment by embracing an absurd level of abstraction under which every set of facts would apply. Counts has failed to point to any evidence of KRATON treating younger workers with *similar, relevant* test results better. The company has in turn noted that Counts is the only employee in its history to submit a "urine" sample that was deemed not consistent with human urine. (Doc. # 41, Mulford Aff. at 2 ¶ 5.) In seeking similarly situated employees, KRATON points to two former employees whom it discharged after drug tests conducted within their 48-month follow-up period failed to produce passing results. (Doc. # 41, Mulford Aff. at 1-2 ¶ 4 .) These individuals are closer to Counts' rather unique situation in that they also failed to pass second drug tests; while not wholly analogous to Counts, they can inform the company's conduct more than individuals whose specimens could not be tested for reasons beyond their control.

Even assuming that Counts has established a *prima facie* case of age discrimination, his claim ultimately fails. After a plaintiff has established a *prima facie* case, the burden of production moves to the defendant to present a legitimate non-discriminatory reason why the plaintiff was fired. *See Hagan v. Warner/Elecktra/Atlantic Corp.*, 92 Fed. Appx. 264, 267 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). After the defendant has met its burden of production, the plaintiff now has the burden to demonstrate that the reason offered by the defense was pretexual. *Id*. KRATON asserts that it fired Counts because of his failure to pass his drug test. This is a non-discriminatory reason for termination.

In order to demonstrate that the reason offered by KRATON is pretexual, Counts must demonstrate that (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse employment decision, or (3) the proffered reason was insufficient

to motivate the adverse employment action. *Koval v. Dow Jones & Co.,* 86 Fed. Appx. 61, 66 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)). He "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. In this explanation the plaintiff offers evidence that "circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id* at 1084.

Here, Counts argues that he did not violate KRATON's drug policy or his return to work agreement because he did not test positive for drugs. This dubious argument fails insofar as no reasonable juror could conclude that he did not violate the foregoing by apparently submitting something other than his own urine for testing. *Avoiding* a substantive drug test is not analogous to *passing* the drug test.[6]

It is well settled that to establish pretext, a "plaintiff must allege more than a dispute over the facts upon which his discharge was based. [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806-07). The Court of Appeals has therefore set forth the essential inquiry for a court:

---

[6] Counts attempts to create an issue of fact by pointing to his undated Rebuttal Declaration statement that he "was consistently told by my supervisors and those in charge of the drug policy that a 'failed drug test' was one in which illicit drugs were present." (Doc. # 44, at 1 ¶ 2.) The Court has already explained earlier that it must disregard the entirety of this declaration because it lacks a date and the Court cannot discern when it was signed. *See Bonds*, 20 F.3d at 702. Moreover, even if the Court could consider the purported declaration, the self-serving quote is a conclusory allegation that is not tied to any specific identified individual or event and need not be accepted.

10

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Id*. at 494 (internal citation omitted) (quoting *Smith*, 155 F.3d at 807). There is no presence here of a material dispute over whether KRATON made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reasons for the treatment Counts received. The issue is not whether the samples were evaluated correctly by the labs that analyzed them. Rather, the issue is what KRATON honestly and reasonably believed concerning the results–and what the company did as a result. The only evidence before the Court suggests that the company reviewed both lab results, believed them, determined that the results in conjunction with Counts' history warranted discharge, and acted accordingly.

Counts argues that he was discharged because he had informed KRATON that he intended to retire in 13 months. But his connecting a conclusory line between his plan and his discharge is insufficient to survive summary judgment. It is well settled that "mere conclusory allegations do not suffice to prove intentional discrimination based on age." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 941 (6th Cir. 1987). Counts has produced no evidence that KRATON's proffered reason had no basis in fact, that the proffered reason did not actually motivate the discharge decision, or that the proffered reason was insufficient to motivate his discharge. Accordingly, KRATON is entitled to summary judgment on his claim of age

11

discrimination.

### *2. Retaliation*

KRATON also moves for summary judgment on Counts' claim for retaliation. Counts' theory is that KRATON discharged him in retaliation for his participating in union-organizing activities, for filing safety reports, and for complaining about the company's safety standards. The company moves for summary judgment on this claim on the grounds that Counts has failed to present a *prima facie* case of retaliation and that, even if he has met that standard, he has failed to demonstrate pretext.

The Ohio statute under which Counts asserts retaliation provides:

> It shall be an unlawful discriminatory practice ... [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I). The federal standard for a retaliation claim governs Count's state law retaliation claim as well. *See Galey v. May Dep't Stores Co.*, 9 Fed. Appx. 295, 298-99 (6th Cir. 2001) ("In reviewing retaliation claims, Ohio courts look to federal case law"); *see also Hollingsworth v. Time Warner Cable*, 157 Ohio App. 3d 539, 553, 812 N.E.2d 976, 987 (Ohio 1st App. Dist. 2004) ("The test for establishing a retaliation claim under federal and state law is basically the same"). Thus, for Counts to prevail on his retaliation claim, he must "prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000)). A *prima facie* case requires a

plaintiff to show by circumstantial evidence that he engaged in protected activity, that the defendant knew of this activity, that the defendant then took an adverse employment action against the plaintiff (or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor), and that there was a causal connection between the protected activity and the adverse employment action or harassment. *Creusere v. Bd. of Educ. of the City Sch. Dist. of the City of Cincinnati*, 88 Fed. Appx. 813, 820 (6th Cir. 2003) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000)). Further, " '[t]he evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action.' " *Id.* (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998)).

      KRATON asserts that Counts' claim falters because he did not engage in activity protected under Ohio Rev. Code Chapter 4112 and because he cannot demonstrate a causal connection between a protected activity and his discharge. For example, the company contends that it did not know of Counts' more recent union-related activities, and that his not hiding his discussions about unions is not tantamount to the company knowing of such discussions. Thus, KRATON concludes, accepting Counts' contrary conclusory allegations of knowledge would impermissibly predicate liability on unsubstantiated belief. KRATON also argues that Counts has presented no direct or circumstantial evidence of the requisite causal connection.

      The Court need not resolve the issue of the scope of Ohio Rev. Code §4112.02(I), however, because even assuming *arguendo* that Counts has established this first aspect of a *prima facie* case of retaliation, he has failed to demonstrate a casual connection (and that KRATON's asserted nondiscriminatory reason for his discharge is pretextual). As noted,

13

KRATON has presented evidence that it terminated Counts for his failure to pass a drug test. Counts in turn has failed to point to sufficient evidence to raise even an inference that KRATON's proffered reason was not the true reason for his discharge. The Court recognizes that much of Counts' alleged protected activity occurred *years* before his discharge. *See Bacon v. Honda of America Mfg., Inc.*, No. 03-3213, 2006 WL 1973242, *5 (6th Cir. July 13, 2006) (explaining that "[a]lthough in certain circumstances, a temporal connection between the protected activity and the adverse decision can satisfy the fourth element's causal connection requirement," adverse actions that were taken approximately three to four years after the protected activity fail because "[t]his lengthy gap between the protected activity and these adverse actions is insufficient to establish a causal nexus"). More relevant is that Counts made several of the reports he presents as protected activity within 6 weeks to several months before his discharge. The attenuated length of time fails to create the requisite causal connection. *See Hatchett v. Health Care and Retirement Corp. of America*, No. 05-1790, 2006 WL 1525688, at *7 (6th Cir. June 1, 2006) (an adverse employment action taken one month after employee engaged in protected activity did not establish a causal connection for retaliation claim where employer provided a compelling alternate causal explanations for action). There is thus no sufficient inference that KRATON discharged Counts with a discriminatory animus.[7] *See Arraleh v. County of Ramsey*, No. 05-4474, 2006 WL 2561240, at *7 (8th Cir. Sept. 7, 2006) ("a period of three weeks between [the plaintiff's] complaint of discrimination and his failure to receive a permanent position with the [defendant] may suffice to establish causation in his prima

---

[7] Even if the Court were to conclude that Counts has met a *prima facie* case based on temporal proximity, this does not mean that he has established pretext. *See Martin v. General Elec. Co.*, No. 05-3834, 2006 WL 1818081, at * 7-8 (6th Cir. July 3, 2006).

14

facie case. However, temporal proximity alone is generally insufficient to prove pretext."); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual"); *see also Coulter v. Deloitte Consulting, L.L.C.*, 79 Fed. Appx. 864, 867 (6th Cir. 2003). And there is nothing else before the Court to enable Counts to survive summary judgment on his retaliation claim.

### 3. Breach of Contract

In his memorandum in opposition, Counts specifically clarifies that he does *not* contend in his breach of contract claim that he is entitled to guaranteed employment for life. Instead, Counts explains, he asserts only that KRATON violated a contract of employment "by failing to afford him the three-step Dispute Resolution Procedure." (Doc. # 29, at 43.) Counts' theory of this claim is that KRATON's Dispute Resolution Procedure created a contractual right for Counts to procedural assurances.

KRATON is correct in arguing that an employer's disciplinary policy does not invariably create an employment contract. *Howell v. Whitehurst*, No. L-05-1154, 2005 WL 3078196, at *6-7 (Ohio 6th App. Dist. Nov. 18, 2005). The issue is context-specific and, contrary to Counts' argument, can be resolved on summary judgment. *Id*.

What ultimately proves dispositive of this claim is that there is no proper summary judgment evidence in the record supporting Counts' allegations. Although Counts' memorandum in opposition posits that he and other employees relied on various procedures as part of their employment contracts, the personal declaration to which Counts directs this Court for support has been stricken. Additionally, Counts has not filed a supporting "Affidavit of

15

Roger Eddy" with this Court, despite repeatedly directing this Court to that document in his briefing. There is thus also no evidence before this Court that Counts ever requested review of his termination under the dispute resolution procedures or that they even applied to such terminations.[8] In contrast, KRATON has submitted the affidavit of its human resources manager, who swears that "[Counts] never requested that his termination be reviewed under KRATON's Dispute Resolution Procedure, nor does the Procedure provide for or has it ever been used to contest disciplinary decisions." (Doc. # 41, Mulford Aff. at 2 ¶ 6.)

Thus, there is no evidence upon which a reasonable juror could find a breach of a contract here. Absent a dispute of material fact, the Court is left with the fact that Counts concedes that he was an at-will employee (Doc. # 29, at 43) and that KRATON terminated him in accordance with routine procedures without an applicable dispute procedure creating any applicable or invoked contractual rights. KRATON is therefore also entitled to summary judgment on the breach of contract claim.

### 4. *Promissory Estoppel*

Unlike in his breach of contract claim, Counts *is* asserting in his promissory estoppel claim that KRATON promised him lifetime employment. (Doc. # 29, at 43 n.15.) Directing this Court to his deposition and his declaration (which he improperly refers to as an affidavit), Counts posits that KRATON agents had repeatedly made statements to him that he would not

---

[8] The Court reviews the proper summary judgment evidence to which it is directed, but it is not the Court's function to scour the record in search of other evidence a party might have ignored. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

need other employment and that he relied on those statements.

Promissory estoppel is a viable cause of action in at-will employment cases in Ohio. To establish a *prima facie* case of promissory estoppel in the employment context, Counts must demonstrate " '(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance.' " *Kunkle v. Akron Management Corp.*, No.22511 , 2005 WL 2400933, at *2 (Ohio 9th App. Dist. Sept.. 1, 2005) (quoting *Current Source, Inc. v. Elyria City School Dist.*, 157 Ohio App. 3d 765, 773, 813 N.E.2d 730, 738 (Ohio 9th App. Dist. 2004). The Ohio Supreme Court has further explained:

> [T]he doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 105, 483 N.E.2d 150, 155 (1985). Despite the potential viability of the claim, however, Counts' cause of action ultimately fails.

As noted, Counts directs this Court to his declaration/"affidavit."[9] But the Court has necessarily struck that document. He also directs the Court to his deposition (Doc. # 29, at 42), but review of that document indicates only that three unnamed and allegedly unknown individuals purportedly made representations to Counts when he was beginning and continuing his employment with Shell in the 1970s. (Doc. # 24, Counts Dep. at 144-46.) Although Counts

---

[9] Counts also directs the Court to the Eddy Affidavit (Doc. # 29, at 43), but no such document has ever been filed with the Court.

notes that managers repeated such statements in the early 1970s, he has also expressly disavowed that any other individuals made similar oral statements to him. (Doc. # 24, Counts Dep. at 147-48, 161.) He does concede that a promise that he "would not be terminated under any circumstance[s]" and a promise that he "would not be terminated for a violation of company policy" were never "brought up." (Doc. # 24, Counts Dep. at 146.)

The conclusory allegations of oral promises made by Shell agents, not KRATON agents, in the 1970s do not serve as a foundation for Counts' promissory estoppel claim. The alleged promises are of such general and vague nature that they can hardly be said to be clear and unambiguous promises upon which Counts could reasonably rely. Under Ohio law, "[a] promise of continued employment must be for a specific term in order to establish a prima facie claim of promissory estoppel." *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 WL 3220192, at *11 (Ohio 10th App. Dist. Dec. 1, 2005). Even if the Court were to accept the alleged promises' reference to retirement age as indicating a specific term, the "perform to the best of your abilities" qualifier punctures any promise; the subjective, ambiguous nature of the qualification inherently renders the alleged "promise" meaningless (and it is doubtful that failing to pass a drug test constitutes the desired performance contemplated by the employer). Moreover, even assuming the sufficiency of the alleged oral statements, Counts' subsequent written acceptance of his at-will employment with KRATON trumps the prior oral promises made by a different employing entity. *See Vickers v. Wren Indus., Inc.*, No. Civ.A. 20914, 2005 WL 1685101, at *10 (Ohio 2d App. Dist. July 8, 2005) (affirming summary judgment because a written at-will employment agreement agreed to by an employee relieves the employer of any alleged prior oral promises of lifetime employment).

There is no jury question, then, because the alleged promises are insufficient, there is no record evidence that KRATON agents made oral promises upon which Counts undertook actual expected action or engaged in forbearance, and Counts' signing of a subsequent unambiguous, written at-will employment agreement vitiated any reasonable reliance. Accordingly, KRATON is entitled to summary judgment on Counts' promissory estoppel claim.

### IV. Conclusion

For the foregoing reasons, the Court:

(1) **STRIKES** the Declaration of Randy Counts filed on June 8, 2006 (Doc. # 31);

(2) **DENIES AS MOOT** KRATON's motion to strike that declaration (Doc. # 33);

(3) **STRIKES** Counts' Declaration filed on June 21, 2006 in conjunction with his opposition to the motion to dismiss (Doc. # 39, Ex. 2);

(4) **STRIKES** Counts' Rebuttal Declaration filed on July 25, 2006 (Doc. # 44);

(5) **DENIES** Counts' motion to strike or, in the alternative, to file additional summary judgment evidence and the proffered sur-reply (Doc. # 43);

(6) **STRIKES** Counts' proffered sur-reply (Doc. # 46); and

(7) **GRANTS** KRATON's motion for summary judgment (Doc. # 22).

The Complaint also names a John Doe defendant. Counts never complied with the Magistrate Judge's notice that all amendments to the pleadings or joinder of parties be filed by June 30, 2005. (Doc. # 12, at 2.) Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the John Doe defendant. *See* Fed. R. Civ. P. 4(m) (stating that when a plaintiff

has failed to make timely service of a summons and complaint, a court "upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to [the unserved defendants] or direct that service be effected within a specified time").

The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

                                                         s/ Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE